WILL MOORE v. THE STATE.

No. 8188.    Decided April 9, 1924.

Rehearing denied May 14, 1924.

**Manufacturing Intoxicating Liquor—Bill of Exceptions.**

Where, upon trial of manufacturing intoxicating liquor, bills of exception complaining of the rejection of testimony for the defendant would at most have rebutted or tended to rebut the proposition that appellant was present, taking part in the manufacturing of the liquor, and the facts irresistibly showed the presence of the defendant and his headlong flight when the officers approached, etc., there is no reversible error, and the conviction being otherwise fully sustained by the evidence, the judgment is affirmed.

Appeal from the District Court of Concho.    Tried below before the Honorable J. O. Woodward.

Appeal from a conviction of unlawfully manufacturing intoxicating liquor; penalty, one year imprisonment in the penitentiary.

The opinion states the case.

*Wright & Harris,* for appellant.—On question of declarations of third party: Chenault v. State, 201 S. W. Rep., 658; Harrison v. State, 83 id., 699; Silvas v. State, 71 Texas Crim. Rep., 213.

*Tom Garrard,* Attorney for the State and *Grover C. Morris,* Assistant Attorney, for the State.

LATTIMORE, JUDGE.—From conviction of a felony in the District Court of Concho County, with a punishment fixed at one year in the penitentiary, this appeal is taken.

The indictment was for manufacturing intoxicating liquor. The court gave to the jury the law of principals, and also charged on circumstantial evidence. No complaint is made of the charge. That the whisky was in process of manufacture in a house a few hundred yards from where appellant lived, on the occasion in question, is without dispute.    Officers in two cars approached said house; two negroes walked away from it toward a barn.    Appellant came out of the kitchen of said house running, and ran to where a bridled horse was standing,—jumped on said horse and fled as fast as the horse could run toward the Concho river.    Some of the officers in the car pursued

him but he got to the river bottom and made his escape. A few hours later he was brought back to where the officers were by a man named Skipper. Appellant and the other two negroes were carried back to town by the sheriff in his car. The two negroes who were walking toward the barn made no apparent effort to escape. When questioned they at first denied any knowledge of the still, etc., but when challenged as to their knowledge of who was making the liquor, they said that this appellant was. Later and while all three of the negroes were in the sheriff's car on their way to town one of them stated to the officer that "we" got this still about a month ago from a man named Burum.

There are three bills of exception in the record. The first complains of the rejection of testimony of the sheriff that Bedford, one of the negroes who was walking toward the barn, stated that he had made whisky before. This appears to have been offered as a circumstance to show that Bedford and not appellant, was making the whisky in question. At most it would not have rebutted or tended to rebut the proposition that appellant was present and taking part in the manufacture of the liquor in question. The prosecution seems to have been based on the idea that appellant either alone or with the other negroes was violating the law. The facts irresistibly show the presence of appellant and his headlong flight when the officers approached. They also show lack of effort to escape on the part of the other two negroes who were there; also their statement which might well have been deemed by appellant as res gestae and therefore not a fit subject for objection, that appellant was making the whisky; also that in the car later and in the presence of appellant one of the other negroes said that "We got this still" from Mr. Burum.

Another bill of exceptions complains that a State witness was allowed to testify that "They ran the accused into the river bottom and into the river," this being urged as a statement of a conclusion and not one of fact. Whether this be true appears to us of no materiality. In ordinary language one who pursues another in narrating the occurrence says "We ran him," and there being no dispute of the fact that the officers pursued appellant to the river bottom, and for aught we know into the river itself, the matter becomes at least harmless.

The remaining bill complains that the appellant was not allowed to show by the sheriff that at another time and under circumstances wholly unrevealed by the bill, the sheriff got another still used for the purpose of manufacturing liquor from the negro Bedford. It is averred that this testimony would have shown Bedford to be a manufacturer of whisky, and would have tended to rebut the guilt of appellant in this particular instance. We can not follow appellant's reasoning: Bedford might have admitted himself a manufacturer of liquor at some other time and place and this would in no way weaken

the case of the State against appellant herein, for his guilty connection with the transaction would seem to be entirely supported by the circumstances.

The circumstances in evidence amply support the conclusion of guilt reached by the jury. We have to some extent adverted to them above. The fires were burning under the still and from its worm whisky was running into a half filled crock when the officers approached the ranch house. Appellant lived near by. Neither of the other two negroes who were at the house is shown to have lived anywhere in the neighborhood. Appellant fled using a horse to enable him to escape. The others did not flee. Immediately upon being questioned as to who was making the liquor, one of the other negroes stated that appellant was making it. This testimony was not objected to. Later in the presence of appellant one of the other negroes said that "we" got this still. The sheriff said that the bunch of them were together in the car at the time. No explanation of his presence or his flight was attempted by appellant. No effort was made by the offer of any material testimony to show the connection of any other person with the still.

Finding no error in the record, an affirmance will be ordered.

*Affirmed.*

[Rehearing denied, May 14, 1924. Reporter.]